[Cite as *Norman v. Schumacher Homes of Circleville, Inc.*, 2013-Ohio-2687.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| JESSICA M. NORMAN, | : | Case No. 12CA3338 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| SCHUMACHER HOMES OF | : | |
| CIRCLEVILLE, INC., | : | **RELEASED 6/25/13** |
| | : | |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

Jason Shugart and D. Dale Seif, Jr., Seif & Shugart, LLC, Waverly, Ohio for appellant.

David E. Butz and Aletha M. Carver, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Canton, Ohio for appellee.

_____

Harsha, J.

{¶1}   Jessica Norman appeals the trial court's judgment granting Schumacher Homes of Circleville, Inc.'s (Schumacher Homes) motion to stay proceedings pending arbitration and argues that the arbitration provision in the parties' purchase agreement is unenforceable.

{¶2}   First, Norman argues that the arbitration provision is ambiguous about the number of arbitrators that will hear the claim and points to the provision's use of both the terms "arbitrator" and "arbitrator(s)." However, the use of both of these terms together does not create any ambiguity, as the provision states that the parties agree to "binding arbitration by an arbitrator." And when read in conjunction with this statement, the term "arbitrator(s)" clearly refers to the singular form. Because the provision is not reasonably subject to two interpretations it is not ambiguous.

{¶3} Norman next claims that costs of arbitration are prohibitive and she cannot afford to commence arbitration. She also contends that the trial court erred by finding that she did not prove that arbitration was cost prohibitive because she failed to submit evidence showing the cost differential between arbitration and litigation. We agree with Schumacher Homes that it would be unsound to find an arbitration provision unenforceable due to prohibitive costs when the costs of litigation may be just as high or higher, especially in light of Ohio's strong public policy favoring arbitration. And because Norman failed to submit any evidence of the expected costs and fees of litigation, we agree she did not meet her burden to demonstrate that costs of arbitration are prohibitive.

{¶4} In addition, Norman argues that in determining she failed to prove arbitration was cost prohibitive, the trial court erred by finding that her claim of damages in excess of $1,000,000.00 is highly speculative. The fees for arbitration increase with the amount of the claim and Norman calculated her arbitration fees based on this value. Thus, a court considering a party's contention that arbitration is cost prohibitive must take into account the amount of the party's claim. And considering Norman's estimation is over seven times the purchase price of her home, the trial court did not err by finding Norman's estimation of damages is speculative.

{¶5} Norman also argues that Schumacher Homes fraudulently induced her into signing the purchase agreement because it misrepresented that her home would include a full basement. However, an arbitration clause is essentially a contract within a contract. Therefore, a party must show that they were fraudulently induced into signing the clause itself, rather than the contract in general. And because Norman's allegation

of fraud relates only to the purchase agreement in general and she makes no claim that Schumacher Homes made any misrepresentations about the arbitration provision itself, this argument is meritless.

{¶6}    Next Norman claims that based on *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992), the parties' arbitration provision has no meaning under Ohio law because it requires "non-binding" arbitration in certain circumstances. In *Schaefer*, the Ohio Supreme Court held that for a dispute resolution procedure to be classified as arbitration, the decision rendered must be final, binding and without any qualification or condition as to the finality of an award.  However unlike the arbitration provision in *Schaefer*, the provision here provides that any decision rendered by the arbitrator is "final and binding" and that non-binding arbitration is only available in the event that binding arbitration is legally precluded.  Therefore, *Schaefer* does not support Norman's argument; we reject her contention that the provision is unenforceable on this basis.

{¶7}    Finally, she argues that R.C. 2711.03(B) requires the trial court to hold a hearing before ruling on a motion to compel arbitration; thus the trial court erred by granting Schumacher Homes' motion to stay proceedings pending arbitration without first conducting such a hearing.  However, a motion to stay proceedings pending arbitration made under R.C. 2711.02 is distinct from a motion to compel arbitration made under R.C. 2711.03.   Although a trial court may in its discretion hold a hearing when considering whether a stay is proper under R.C. 2711.02, that statute does not require a hearing.  Here Schumacher Homes captioned its motion as a motion to stay proceedings pending arbitration, but cited both R.C. 2711.02 and 2711.03.   However,

even assuming that Schumacher Homes made the motion under R.C. 2711.03, Norman made no request for an oral hearing. And because a trial court need not hold an oral or evidentiary hearing regarding an R.C. 2711.03 motion absent a proper request, the trial court did not err by failing to hold an oral hearing before ruling on Schumacher Homes' motion.

## I. FACTS

**{¶8}** This case involves a dispute about the construction of Jessica Norman's home and the enforceability of the arbitration clause in the purchase agreement. Norman and Schumacher Homes entered into a purchase agreement for the construction of a new home on Norman's property. Under the terms of the agreement, Schumacher Homes was to construct the home with a full basement. However during construction, water accumulated in the basement and a dispute arose about whether to construct a crawl space rather than a full basement.

**{¶9}** Norman filed a complaint for declaratory judgment asking the trial court to decide whether Schumacher Homes could enforce the arbitration provision in the purchase agreement. Schumacher Homes responded by filing a motion to dismiss, or in the alternative, to stay proceedings pending arbitration. The trial court granted Schumacher Homes' motion to stay, finding that the arbitration clause was neither unconscionable nor outside the scope of Norman's claims. Norman now appeals the trial court's judgment.

## II. ASSIGNMENTS OF ERROR

**{¶10}** Norman raises seven assignments of error for our review:

> 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS TO ARBITRATION, WHEN THE

ARBITRATION CLAUSE FAILS TO IDENTIFY THE NUMBER OF ARBITRATOR(S) WHICH WILL REVIEW THE CLAIMS.

2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS TO ARBITRATION, WHEN THE ARBITRATION CLAUSE IS AMBIGUOUS AND MISLEADING AS TO FEES BECAUSE IT DEFINES ONLY WHO WILL PAY ARBITRATOR'S FEES, BUT DOES NOT DEFINE WHICH PARTY WILL PAY THE ARBITRATION FILING FEE AND CASE SERVICE FEE.

3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS TO ARBITRATION, WHEN THE SIGNATURES ON THE ARBITRATION CLAUSE WERE OBTAINED THROUGH MISREPRESENTATION AND PLAINTIFF-APPELLANT CHALLENGED THE VERY EXISTENCE OF THE CONTRACT, WHICH WOULD RENDER THE ARBITRATION CLAUSE VOID.

4. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS AGAINST DEFENDANT-APPELLEE SCHUMACHER HOMES OF CIRCLEVILLE, INC. TO ARBITRATION, WHEN THE ARBITRATION CLAUSE REQUIRED PARTIES TO SUBMIT TO NON-BINDING ARBITRATION.

5. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS TO ARBITRATION, WHEN THE TRIAL COURT REQUIRED PLAINTIFF-APPELLANT TO PROVIDE EVIDENCE COMPARING THE COST OF ARBITRATION TO THE COST OF LITIGATION WHEN THE OHIO SUPREME COURT REQUIRES ONLY SPECIFIC EVIDENCE OF LIKELY ARBITRATORS' FEES AND PLAINTIFF'S FINANCIAL INABILITY TO PAY THOSE FEES, INCLUDING PLAINTIFF'S PARTICULAR FINANCIAL SITUATION.

6. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING PLAINTIFF-APPELLANT'S CLAIMS TO ARBITRATION, WHEN THE TRIAL COURT ARBITRARILY DETERMINED THAT PLAINTIFF-APPELLANT'S CLAIM FOR DAMAGES WAS HIGHLY SPECULATIVE.

7. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND BREACHED PLAINTIFF-APPELLANT'S DUE PROCESS RIGHTS BY FAILING TO FOLLOW THE PROCEDURAL REQUIREMENTS UNDER R.C. 2711.03 TO CONDUCT DISCOVERY AND BRIEF THE ISSUE OF THE VALIDITY OF THE ARBITRATION CLAUSE WHEN DEFENDANTS-APPELLEES MOVED FOR A STAY PURSUANT TO R.C. 2711.02 AND R.C. 2711.03.

III. LAW AND ANALYSIS

A. Legal Standard

**{¶11}**  Many appellate courts have reviewed a trial court's decision to grant or to deny a motion to compel arbitration or stay the proceedings under the abuse of discretion standard.  *See Fields v. Herrnstein Chrysler, Inc.*, 4th Dist. No. 12CA827 2013-Ohio-693, ¶ 12.  However the determination of a written contract's meaning is a question of law, thus in reviewing whether an arbitration clause is enforceable, we apply a de novo standard of review.  *See Redmond v. Big Sandy Furniture, Inc.*, 4th Dist. No. 08CA12, 2008-Ohio-6084, ¶ 10, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 37.

**{¶12}**  Ohio courts recognize a presumption favoring arbitration when the issue of the parties' dispute falls within the scope of the arbitration provision. *Taylor Bldg.* at ¶ 27.  In light of this strong presumption favoring arbitration, all doubts should be resolved in its favor.  *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15.

**{¶13}**  "Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." *Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992).  "Thus, 'if a dispute even arguably falls within the [parties'] arbitration provision, the trial court must stay the proceedings until arbitration has been completed.'" *Fields* at ¶ 15, quoting *Tomovich v. USA Waterproofing & Foundation Servs, Inc.*, 9th Dist. No. 07CA9150, 2007-Ohio-6214, ¶ 8.

**{¶14}**  Ohio's strong public policy favoring arbitration is codified in Chapter 2711 of the Revised Code.  *Westerfield v. Three Rivers Nursing & Rehab. Ctr., LLC*, 2nd Dist.

No. 25347, 2013-Ohio-512, ¶ 17.  Under R.C. 2711.02(B) on application of one of the

parties, a trial court may stay litigation in favor of arbitration pursuant to a written

arbitration agreement. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d

12, at ¶ 28.  R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an
> agreement in writing for arbitration, the court in which the action is
> pending, upon being satisfied that the issue involved in the action is
> referable to arbitration under an agreement in writing for arbitration, shall
> on application of one of the parties stay the trial of the action until the
> arbitration of the issue has been had in accordance with the agreement,
> provided the applicant for the stay is not in default in proceeding with
> arbitration.

"Thus, R.C. 2711.02 requires a court to stay the trial of an action 'on application of one

of the parties' if (1) the action is brought upon any issue referable to arbitration under a

written agreement for arbitration[;] (2) the court is satisfied the issue is referable to

arbitration under the written agreement[;] and (3) the applicant is not in default in

proceeding with arbitration." *Fields,* 4th Dist. No. 12CA827, 2013-Ohio-693, at ¶ 14.

{¶15}  On appeal, Norman does not argue that that the parties' dispute about the

construction of her basement falls outside scope of the arbitration clause in the

purchase agreement.  Rather, she only challenges the validity of the arbitration

provision and contends that it is unenforceable for several reasons.  And because it is

clear that Norman's claim regarding the construction of her basement is covered by the

arbitration provision's broad language, we focus our review on its enforceability.

{¶16}  The enforceability of arbitration agreements is addressed in R.C.

2711.01(A) which provides that such agreements "shall be valid, irrevocable, and

enforceable, except upon grounds that exist at law or in equity for the revocation of any

contract." *See Hayes,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 16-17.

R.C. 2711.01 "'acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits.'" *Taylor Bldg.* at ¶ 41, quoting *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501-502, 692 N.E.2d 574 (1998). Thus, to defeat a motion under R.C. 2711.02 for a stay of litigation a party must demonstrate that the arbitration provision itself, and not merely the contract in general, is unenforceable. *Taylor Bldg.* at ¶ 41.

### B. Ambiguity

{¶17} Initially Norman argues that the arbitration provision in the parties' purchase agreement is unenforceable because it is ambiguous. In her first assignment of error she claims that the provision is ambiguous about the number of arbitrators. Specifically, she contends that because the arbitration provision includes both the terms "arbitrator" and "arbitrator(s)" it failed to identify the number of arbitrators who will decide the claim and there was no "meeting of the minds" on this essential term. We disagree.

{¶18} As noted, the general principles of contract law govern the applicability of arbitration clauses. *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 8th Dist. No. 89277, 2009-Ohio-4873, ¶ 10. "'A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.'" *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. Thus to be enforceable, "'the contract must be definite and certain.'" *Rayess* at ¶ 19, quoting *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). "Contract language is ambiguous 'if it is unclear, indefinite, and reasonably subject to dual interpretations * * *.'" *Scarberry v.*

*Lawless*, 4th Dist. No. 09CA18, 2010-Ohio-3395, ¶ 24, quoting *Beverly v. Parilla*, 165

Ohio App.3d 802, 2006-Ohio-1286,848 N.E.2d 881, ¶ 24 (7th Dist.).

{¶19}  Here, the provision is not ambiguous regarding the number of arbitrators.

In paragraph 27 of the purchase agreement, the arbitration provision states:

> The Parties agree that any claim, dispute or cause of action, of any nature
> * * * shall be subject to final and binding arbitration by an arbitrator
> appointed by the American Arbitration Association in accordance with the
> Construction Industry Rules of the American Arbitration Association and
> judgment may be entered on the award in a court of appropriate venue.   *
> * * Each party shall be responsible for one-half of the arbitrator's fees. * * *
> The arbitrator(s) shall determine all issues regarding the arbitrability of the
> dispute.  The powers of the arbitrator(s) shall include all legal and
> equitable remedies, including but not limited to, money damages,
> declaratory relief, and injunctive relief.  Should any party refuse or neglect
> to appear at and participate in arbitration proceedings after due notice, the
> arbitrator will make an award based on evidence introduced by the parties
> who do appear and participate."

{¶20}  We do not agree with Norman that the use of the term "arbitrator(s)" in

combination with the term "arbitrator" causes any ambiguity regarding the number of

arbitrators who will review the claim.  The provision clearly states that the parties agreed

to "binding arbitration by *an arbitrator  * * *.*" (Emphasis added.)  The subsequent

referral to "arbitrator(s)" in the provision does not contradict this statement.  Rather, the

letter "s" in parenthesis indicates either the singular or plural form of the word may be

used.  And when the term "arbitrator(s)" is read in conjunction with the rest of the

provision it is clear that the singular form is appropriate.  Because this language is not

reasonably subject to two interpretations, it is not ambiguous and we overrule Norman's

first assignment of error.

{¶21}  In her second assignment of error, Norman contends that the arbitration provision is also ambiguous because it fails to define which party will pay the arbitration filing and case service fees.

{¶22}  Under the arbitration provision "[e]ach party shall be responsible for one-half of the arbitrator's fees."  As Norman points out, the provision fails to discuss the responsibility or amount of any other fees or costs.  However, she fails to cite any legal authority to support her claim that this alone renders the arbitration provision unenforceable.

{¶23}  To the contrary, "[a]n arbitration provision in a contract is not rendered unenforceable simply because the provision is silent as to costs and fails to provide protection from potentially substantial costs."  *Post v. Procare Automotive Serv. Solutions*, 8th Dist. No. 87646, 2007-Ohio-2106, ¶ 47 (Cooney, J., concurring in part and dissenting in part), citing *Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L. Ed.2d 373 (2000).  *See also Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 58 (finding *Green Tree* persuasive authority for state-law claims).  Rather, the party challenging the arbitration provision must show the likelihood of incurring prohibitive costs.  *Taylor Bldg.* at ¶ 58-59.

{¶24}  Thus, to the extent that Norman argues the failure to address the costs and fees of arbitration alone renders the provision unenforceable, we disagree.  In the remainder of her second assignment of error, Norman argues that the costs of arbitration are "absurdly prohibitive" and she therefore "cannot afford to commence the arbitration."  Because these issues are related to her fifth and sixth assignment of errors we consider them together below.

## C. Costs and Fees

**{¶25}** In her fifth assignment of error, Norman contends that she is unable to initiate arbitration due to the excessive costs, and the trial court erred by finding that she needed to show the cost differential between arbitration and litigation to demonstrate that arbitration would be cost prohibitive. In her sixth assignment of error, she argues that because the costs of arbitration are based in part on the amount of damages claimed, the trial court erred by enforcing the arbitration provision after finding her claim for damages was too speculative.

**{¶26}** "[A]n arbitration clause will not be held unenforceable based on unsupported allegations of prohibitive costs." *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 59. Rather, the party challenging the arbitration provision must show that such costs would be prohibitively high. *Id.* This means that the party seeking to invalidate an arbitration agreement must show either that he is unable to pay or that the costs are so substantial as to deter him from initiating arbitration. *Post*, 8th Dist. No. 87646, 2007-Ohio-2106, at ¶ 47 (Cooney, J., concurring in part and dissenting in part). This requires the party to present evidence regarding her ability to pay the costs and fees. *Id.* at ¶ 47-48. Thus, we review whether arbitration costs are prohibitive on a case-by-case basis. *Id.* at ¶ 46.

**{¶27}** In addition, the party must show that the costs of arbitration would be greater than the costs of litigation and that such costs would deter him or her from submitting the claim to arbitration. *Id.* at ¶ 49. "'[A]lthough the cost of arbitration may be high, so too is the cost of litigating a claim. Indeed, it is quite possible that litigation could result in substantial legal fees and costs that, in the end, exceed the cost of

arbitration.'" *Id.*, quoting *Handler v. Southerland Custom Bldrs., Inc.*, 8th Dist. No. 86956, 2006-Ohio-4371, ¶ 18.

**{¶28}** In her memorandum opposing Schumacher Homes' motion to stay the proceedings, Norman submitted evidence showing the expected costs of arbitration. She provided a fee schedule from the American Arbitration Association indicating that based on a claim in excess of $1,000,000.00 but less than $5,000,000.00, she would be responsible for an initial filing fee of $8,200 and a final fee of $3,250. She also submitted an affidavit stating her total income for 2011 was $55,722.33 and that she "cannot afford to pay the excessive fees to commence a claim against [Schumacher Homes]."

**{¶29}** The trial court found that although Norman provided evidence of her annual income and the estimated costs of arbitration, she "provided no evidence of the expected cost differential between arbitration and litigation in court." On appeal, Norman claims that she provided the necessary evidence regarding the costs of litigation by submitting an affidavit from her attorney stating he agreed to represent her on a contingency fee basis. Specifically she contends that because "the cost of her attorney's fee is nothing unless her attorney collects a judgment," she has shown that the costs of arbitration exceed the potential costs of litigation. Moreover, she argues that "the case law does not require [her] to prove a cost differential between arbitration and litigation, the trial court simply invented this metric requirement." We find this statement to be simply false.

**{¶30}** Although we have not considered this exact issue, several appellate courts in Ohio have required a party to provide some evidence showing that the costs of

arbitration would be greater than the costs of litigation. *See U.S. Bank N.A. v. Wilkens*, 8th Dist. No. 96617, 2012-Ohio-1038, ¶ 39; *Moran v. Riverfront Diversified, Inc.*, 197 Ohio App.3d 471, 2011-Ohio-6328, 968 N.E.2d 1, ¶ 29 (2nd Dist.); *Handler v. Southland Custom Builders, Inc.*, 8th Dist. No. 86956, 2006-Ohio-4371, ¶ 18; *English v. Cornwell Quality Tools Co., Inc.*, 9th Dist. No. 22578, 2005-Ohio-6983, ¶ 17-18.  We adopt this requirement because even though the costs of arbitration may be high, so may be the costs of litigation. *See Post*, 8th Dist. No. 87646, 2007-Ohio-2106, at ¶ 49 (Cooney, J., concurring in part and dissenting in part).  Thus it would be unsound to find an arbitration provision unenforceable due to prohibitive costs when the costs of litigation may be just as high or higher, especially in light of Ohio's strong public policy favoring arbitration.  Again, the only evidence Norman submitted regarding the costs of litigation was the fee arrangement with her attorney.  This fails to provide any insight into other traditional costs and fees normally associated with litigation.  And because she submitted no evidence showing what these costs and expenses may be, we agree with the trial court that she failed to demonstrate that the costs of arbitration would be prohibitive.

**{¶31}** In addition we agree that Norman's claim of damages in excess of $1,000,000.00 is speculative. *See U.S. Bank* at ¶ 38.  In an affidavit attached to her memorandum opposing Schumacher Homes' motion, her counsel states that Norman "has filed claims against [Schumacher Homes] in excess of $1,000,000.00."  However, nothing in the record indicates she has actually filed a complaint seeking damages against Schumacher Homes; rather, this case was initiated upon her complaint for declaratory judgment to determine the enforceability of the arbitration provision in the

parties' purchase agreement.  Nowhere in the complaint for declaratory judgment does she state a demand for damages.  Furthermore, in her memorandum contra Schumacher Homes' motion to stay, Norman stated that she has filed a separate complaint with the trial court "alleging claims against individuals, who are not parties to the Purchase Agreement or the Arbitration Clause."  Thus, we consider her $1,000,000.00 value an estimation of her claim.  This is relevant because the fees associated with arbitration increase with the amount of the party's claim and Norman calculated her arbitration fees based on a claim in excess of $1,000,000.00.  Considering that the parties agreed to a purchase price of approximately $140,000.00, the estimated damages sought are over seven times the purchase price of the home.  Thus we are forced to take into account the speculative nature of her claim.

{¶32}  Norman cites *Cosner v. Maronda Homes of Ohio, Inc.*, Franklin C.P. No. 06CVH06-8278 (June 5, 2007), in support of her damages estimation and argues *Cosner* resulted in a verdict over $3,000,000.00 for the plaintiff.  And because she will likewise file an Ohio Consumer Sales Protection Act claim, her "request for $1 million is completely reasonable."  However, the decision in *Cosner* that she attached to her brief grants summary judgment in part for the defendant.  Nowhere in the attached decision does the court mention the amount of the plaintiff's claim or the facts surrounding the case.  Thus, we do not consider the case as support for the reasonableness of Norman's $1,000,000.00 claim.  And when considered with her failure to provide some evidence of the costs associated with litigation, we conclude she has not met her burden to demonstrate that arbitration would be cost-prohibitive and overrule her second, fifth, and sixth assignment of errors.

### D. Fraud

**{¶33}** Norman argues in her third assignment of error that Schumacher Homes fraudulently induced her into signing the purchase agreement. She contends that it misrepresented that the home would have a full basement and she relied on these representations when signing the contract.

**{¶34}** However, as we have already indicated, an arbitration provision is effectively a contract within a contract, subject to revocation on its own merits. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 41. "Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself." *ABM Farms,* 81 Ohio St.3d at 502, 692 N.E.2d 574 (1998). Thus, "to defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." *Id. See also Marquez v. Koch*, 4th Dist. No. 11CA3283, 2012-Ohio-5466, ¶ 14.

**{¶35}** Here, Norman makes no claim that Schumacher Homes fraudulently induced her to sign the arbitration provision itself, nor is there any evidence to show this. Rather she asserts that it made misrepresentations regarding the construction of the basement, which induced her to sign the purchase agreement. Because her allegations of fraud relate only to the purchase agreement, and not the arbitration provision, we find her argument to be meritless and overrule her third assignment of error.

### E. Non-Binding Arbitration

**{¶36}** In her fourth assignment of error, Norman claims that because the arbitration provision requires "non-binding" arbitration in certain circumstances, it has no meaning under Ohio law.

**{¶37}** Here, the arbitration provision states:

> The Parties agree that any claim, dispute or cause of action, of any nature * * * shall be subject to final and binding arbitration by an arbitrator appointed by the American Arbitration Association in accordance with the Construction Industry Rules of the American Arbitration Association and judgment may be entered on the award in a court of appropriate venue.  * * * If any state or federal law prohibits binding arbitration for any of the parties' claims, then the parties may proceed to non-binding arbitration of those claims, and all other claims will remain subject to binding arbitration as provided herein.  Further, the parties must proceed with non-binding arbitration as a condition precedent to filing any claim in a court of law.  The parties understand that by agreeing to binding arbitration they are agreeing to arbitrate and not litigate their disputes and are giving up their right to a trial by jury, and to have a trial to a judge, or to seek remedies from a court.

**{¶38}** It is clear from the plain language of the provision that the parties agreed to submit their claims to binding arbitration, unless prevented by state or federal law. Only if binding arbitration is precluded by law, did the parties agree to non-binding arbitration of those claims as a condition precedent to filing a claim in court.  On appeal Norman makes no argument that binding arbitration is prevented in this case, but argues generally that the reference to non-binding arbitration renders the provision unenforceable.

**{¶39}** She bases her claim on the Ohio Supreme Court's decision in *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992).  In that case a plurality of the Court held that "[f]or a dispute resolution procedure to be classified as 'arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties." *Id.* at 711.  In

*Schaefer*, the Court considered an arbitration provision that provided an arbitration

award was only binding if below a designated amount, but non-binding if it exceeded

such amount and that the issues could be retried de novo in court. *Id.* at 714.  The Court

concluded that:

> [the] provision in question here represents a clear attempt to bypass R.C.
> Chapter 2711 by setting up an "escape hatch" for any party disappointed
> with an award exceeding a specified amount.  In doing so, the provision
> completely frustrates the purposes of "arbitration" and every public policy
> reason favoring the arbitration system of dispute resolution.  By permitting
> a trial de novo in some instances, the provision unnecessarily subjects the
> parties to multiple proceedings in a variety of forums, increases costs,
> extends the time consumed in ultimately resolving a dispute, and
> eviscerates any advantage of unburdening crowded court dockets.
> Accordingly, since the provision is not a provision providing for true
> arbitration, the entire agreement to "arbitrate" clause is unenforceable. *Id.*
> at 716.

**{¶40}**  Here, the parties' arbitration provision provides for a dispute resolution

procedure in which the decision rendered is final, binding and without any qualification

or condition to the finality of an award.  The parties agreed to binding arbitration and the

provision clearly states that any decision rendered by the arbitrator is "final and binding."

Unlike the provision in *Schaefer*, here the alternative procedure that provides for "non-

binding" arbitration does not create an "escape hatch" that attempts to circumvent R.C.

Chapter 2711.  Under the arbitration clause, non-binding arbitration is only available in

the event that binding arbitration is legally precluded.  Moreover, the issue in *Schaefer*

was the enforceability of the arbitrators' award, not whether the parties were entitled to

have the matter referred for arbitration in the first instance.  *Travelers Cas. & Sur. Co. v.*

*Aeroquip-Vickers, Inc.*, 6th Dist. No. L-06-1201, 2007-Ohio-5305, ¶ 49.  Therefore, we

do not agree that *Schaefer* supports Norman's argument and overrule her fourth

assignment of error.

### F. Oral or Evidentiary Hearing

{¶41} Finally, in her seventh assignment of error, Norman argues that the trial court breached her due process rights when it granted Schumacher Homes' motion to stay without holding a hearing or allowing the parties to conduct discovery. She contends that under R.C. 2711.03(B) the trial court was required to conduct a hearing before ruling on the motion to compel arbitration.

{¶42} Chapter 2711 of the Revised Code provides a party with different mechanisms to enforce an arbitration agreement. Under R.C. 2711.03:

> (A) The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas * * * for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.
>
> (B) If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue.
>
> In comparison, R.C. 2711.02(B) states:
>
> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *.

{¶43} In *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, the Ohio Supreme Court noted that although a motion to compel arbitration and a motion to stay proceedings pending arbitration both require the trial court to

determine ultimately whether an arbitration agreement is enforceable, they are separate and distinct procedures that serve different purposes. *Id.* at ¶ 14, 17. A motion to compel arbitration under R.C. 2711.03 allows for direct enforcement of an arbitration agreement, while a motion to stay proceedings under R.C. 2711.02 allows for indirect enforcement. *Id.* Accordingly, a party seeking to enforce an arbitration provision may move for a stay under R.C. 2711.02, or petition for an order for the parties to proceed to arbitration under R.C. 2711.03, or seek orders under both statutes. *Id.* at ¶ 18. Thus, "a trial court considering whether to grant a motion to stay proceedings pending arbitration filed under R.C. 2711.02 need not hold a hearing pursuant to R.C. 2711.03 when the motion is not based on R.C. 2711.03. While it is within a trial court's discretion to hold a hearing when considering whether a R.C. 2711.02 stay is warranted, that statute does not on its face require a hearing * * *." *Id.* at ¶ 19.

**{¶44}** In this case, Schumacher Homes filed a "Motion to Dismiss, or in the Alternative, to Stay Proceedings Pending Arbitration." Although Schumacher Homes cited both R.C. 2711.02 and 2711.03 on the face of its motion, the memorandum attached makes it clear that it only sought a stay of the proceedings, rather than an order compelling arbitration. Likewise when considering the motion, the trial court treated it solely as a motion to stay proceedings made pursuant to R.C. 2711.02 and made no order compelling the parties to arbitration.

**{¶45}** Moreover, even if we were to consider Schumacher Homes' motion as a motion to compel arbitration made under R.C. 2711.03, we have held "even subsequent to *Maestle*, that a trial court need not hold an oral or evidentiary hearing regarding an R.C. 2711.03 motion absent a proper request." *Chrysler Fin. Servs. v. Henderson*, 4th

Dist. No. 11CA4, 2011-Ohio-6813, ¶ 21.  Here, Norman made no such request.  After

Schumacher Homes filed its motion to dismiss, or in the alternative, stay proceedings

pending arbitration, the court scheduled a non-oral hearing on the motion.  Rather than

making a request for an oral or evidentiary hearing, Norman simply filed a memorandum

contra Schumacher Homes' motion to stay.  Thus, even assuming arguendo that

Schumacher Homes filed a motion to compel arbitration pursuant to R.C. 2711.03, the

parties had adequately briefed the issue and the trial court did not err by failing to hold

an oral or evidentiary hearing.  And because under R.C. 2711.02, the trial court is not

required to hold a hearing before ruling on a motion to stay proceedings, we overrule

Norman's seventh assignment of error.

## IV. CONCLUSION

{¶46}  Because Norman has not demonstrated that the arbitration provision in

question is unenforceable, we overrule her seven assignments of error and affirm the

trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
William H. Harsha, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**